USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/30/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
SARA BERGER, :
:
                        Plaintiff, :
:     13-CV-6084 (VSB)
        - against - :
:     **OPINION & ORDER**
NEW YORK CITY POLICE DEPARTMENT, :
THE CITY OF NEW YORK, and WAYNE :
SCIBELLI, :
:
                        Defendants. :
:
------------------------------------------------------------X

Appearances:

Marshall B. Bellovin
Kristian E. Alfonso
Ballon, Stoll, Bader and Nadler, P.C.
New York, New York
*Counsel for Plaintiff*

Heather M. Martone
Sean R. Renaghan
Evan M. Piercey
New York City Law Department
New York, New York

Stephen P. Pischl
Clifton Budd & DeMaria, LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff brings this action alleging (1) failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*; (2) unlawful medical

examination in violation of the ADA; (3) disability discrimination in violation of the ADA, NYSHRL, and NYCHRL; and (4) hostile work environment in violation of the ADA, NYSHRL, and NYCHRL. Before me is Defendants' motion for summary judgment. For the reasons that follow, Defendants' motion for summary judgement is GRANTED in all respects, except it is DENIED concerning the failure to accommodate causes of action.

I.  **Background**[1]

Plaintiff is employed by the New York City Police Department ("NYPD") as a Computer Specialist Level III. (Pl.'s Counter 56.1 ¶ 1.)[2] Plaintiff began her employment with the NYPD in September 1989 as a civilian employee, and her office was originally located on the seventh floor of One Police Plaza. (*Id.* ¶¶ 10, 12.) However, in October 2011, Plaintiff's unit—the Network Design and Standard Section ("NDSS")—was moved to the eighth floor of One Police Plaza. (*Id.* ¶ 13.)

In response to Plaintiff's claim that she suffers from acid reflux disease that is exacerbated by dust and, specifically, was exacerbated by dust on the eighth floor, Defendants offered to purchase an air purifier for Plaintiff's workstation. (*Id.* ¶¶ 14–16.) Although Plaintiff disputes whether or not she initially rejected the offer to purchase the air purifier, she admits that she told her employer that the air purifier that was offered could not eliminate the dust that had

---

[1] The facts contained in the Background section are undisputed unless otherwise noted. Defendants include a variety of "facts" that are, in truth, simply restatements of Plaintiff's allegations. (*See, e.g.*, Defs.' 56.1 ¶ 1 ("The Complaint alleges discrimination and hostile work environment violations . . . .").) These purported facts are mere allegations contained in the Complaint when unaccompanied by references in the record, and are not "material facts as to which the moving party contends there is no genuine issue to be tried." *See* Local Civil Rule 56.1.

"Defs.' 56.1" refers to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, filed on February 13, 2017. (Doc. 83.)

[2] "Pl.'s Counter 56.1" refers to Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, filed on March 27, 2017. (Doc. 87.)

2

been triggering her acid reflux. (*Id.* ¶ 16; Pl.'s 56.1 ¶ 1.)[3] Defendants then scheduled Plaintiff for a medical examination, and Plaintiff ultimately refused to attend the medical examination, (Pl.'s Counter 56.1 ¶¶ 17–18), although Plaintiff states that she ultimately refused to attend because her request to have her lawyer present during the exam was denied, (Pl.'s 56.1 ¶¶ 7–8). In addition to offering to purchase an air purifier, Defendants also offered to clean and vacuum the eighth floor to address Plaintiff's dust complaints. (Pl.'s Counter 56.1 ¶ 27.)

Each party retained experts to perform air quality tests. Plaintiff's expert, Kenneth S. Winberg of Safdoc Systems, LLC, collected "total dust and respirable dust samples" from the eighth floor in May 2016 and found that the "samples did not demonstrate excessive levels of either type of dust." (*Id.* ¶ 23.) Defendants' expert, Amir Rasheed of the NYPD's Occupational Safety and Health Section reported that in December 2011, the highest concentration of dust particles on the eighth floor measured 0.001 mg/m, which is within permissible limits. (*Id.* ¶ 24.) Mr. Rasheed also measured the dust levels on the eighth floor in September 2013 and September 2014, and the measurements taken in those months also were within permissible limits. (*Id.* ¶¶ 25–26.)

Plaintiff's desired accommodation was to be moved back to the seventh floor. (*Id.* ¶ 19; *see also* Pl.'s 56.1 ¶ 5.) The parties disagree about the viability of this proposed accommodation, with Defendants maintaining that they could not move Plaintiff to the seventh floor because it would involve her sitting apart from her unit and her supervisors, would prevent face-to-face communication with her colleagues, and would be inefficient, and Plaintiff contending that it was possible to supervise her work on the eighth floor and that her duties and responsibilities did

---

[3] "Pl.'s 56.1" refers to Plaintiff's Amended Rule 56.1 Statement of Disputed Facts in Opposition to Defendants' Motion for Summary Judgment, filed on March 29, 2017. (Doc. 91.)

3

not require constant, in-person supervision.  (Pl.'s Counter 56.1 ¶ 20.)  However, Defendants offered Plaintiff the option of moving back to the seventh floor and changing units to the Local Area Network ("LAN") group, which would have entailed giving Plaintiff a supervisory role. (*Id.* ¶ 21; Pl.'s 56.1 ¶ 4.)[4]  Plaintiff turned down this suggested accommodation claiming (1) the position involved "desktop support" rather than the "internet content filtering" she performed in NDSS, (Pl.'s Counter 56.1 ¶ 21), and (2) the position "would be less challenging and essentially function as [a] demotion – or a step backwards in Plaintiff's career," (Pl.'s 56.1 ¶ 4).

Plaintiff remembers her supervisor, Wayne Scibelli, talking about her NYPD EEO Complaint "out loud by [her] desk so anybody that was around or would walk by could have heard him."  (Pl.'s Counter 56.1 ¶ 30.)  Plaintiff does not remember her supervisor, Andrew Krimsky, ever making any disparaging remarks about her alleged disability.  (*Id.* ¶ 31.)  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 31, 2012 and received a Notice of Right to Sue letter dated May 23, 2013.  (*Id.* ¶¶ 7–9.)

## II. Procedural History

Plaintiff filed her Complaint on August 28, 2013.  (Doc. 1.)  The case was referred to mediation on January 10, 2014, (Doc. 16), and I held a pre-motion conference to address the parties' anticipated motions for summary judgment on April 23, 2015, (Dkt. Entry Apr. 23, 2015).  Briefing was thereafter adjourned to satisfy the parties' desire to test the air quality on the eighth floor at One Police Plaza, as well as to address an alleged spoliation issue and related motion for sanctions.  (Docs. 42, 43, 60, 64.)  I held a second pre-motion conference on November 28, 2016, (Doc. 75; Dkt. Entry Nov. 28, 2016), during which Plaintiff noted that she

---

[4] Plaintiff only denies this fact insofar as she states that if she switched to the LAN group, she would be engaged in desktop support, as opposed to internet content filtering with NDSS. (Pl.'s Counter 56.1 ¶ 21.)

4

would not be filing a motion for summary judgment.

In accordance with the deadlines set, (*see* Doc. 80), Defendants filed their motion for summary judgment on February 13, 2017, (Docs. 81), along with the declaration of Heather Martone, (Doc. 82), a Rule 56.1 Statement of Undisputed Material Facts, (Doc. 83), and a memorandum of law in support, (Doc. 84). Plaintiff filed her opposition on March 27, 2017, (Docs. 85), as well as the affirmation of Marshall B. Bellovin, (Doc. 86), a Counter-Statement to Defendants' Rule 56.1 Statement, (Doc. 87), and a separate Rule 56.1 Statement of Disputed Facts, (Doc. 88).[5] Defendants filed their reply on April 10, 2017. (Doc. 93.)

### III. Legal Standard

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

---

[5] Plaintiff filed an Amended Rule 56.1 Statement on March 29, 2017, with the consent of opposing counsel and pursuant to my order, (Doc. 90), in order to correct an inaccuracy in her original Rule 56.1 Statement, (Doc. 91).

5

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV. Discussion

### A. *Timeliness*

Defendants argue that Plaintiff's Complaint is time-barred since it was filed more than ninety days after Plaintiff received her right-to-sue letter. (Defs.' Mem. 3–4.)[6] Defendants contend that the presumption that a plaintiff has received the notice of a right to sue within three days after mailing applies here, thus rendering Plaintiff's Complaint untimely. (*See id.*) The presumption, however, is rebuttable, and I find that Plaintiff has rebutted this presumption.

"If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive." *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996). Here, Plaintiff not only submitted a certified mail receipt that had accompanied the right-to-sue letter bearing a stamp from her counsel's office as having been received on May 30, 2013, (Doc. 1-2), but Plaintiff also submitted an affidavit from the head paralegal at her attorney's law firm attesting to the firm's practice of affixing such a time stamp "to each incoming piece of mail with the date it is received in the office," (Doc. 86-16 ¶ 2). This evidence sufficiently rebuts the presumption that Plaintiff received the notice on May 26, 2013, and her Complaint was thus timely. *See Sherlock*, 84 F.3d at 526 ("We hasten to note that we would not regard the presence of a *self-serving* date-of-receipt notation on the claimant's copy of a right-to-sue letter (there was no date-of-receipt notation on Sherlock's copy) as evidence rebutting the presumption that the letter was received three days after its typewritten date, *unless the claimant also presented an affidavit or other admissible*

---

[6] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, filed on February 13, 2017. (Doc. 84.)

7

*evidence of receipt on the noted date*." (emphasis added)); *see also Hogarth v. N.Y.C. Health & Hosps. Corp.*, No. 97 Civ. 0625(DAB), 2000 WL 375242, at *4 (S.D.N.Y. Apr. 12, 2000) ("[T]he presumption of delivery can be successfully rebutted with a sworn affidavit giving a detailed description of the mail procedures followed at a company for all incoming mail supporting the conclusion that the mail was never received.").

### B. *Disability Discrimination*

#### 1. **Applicable Law**

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Disability discrimination claims under the ADA are analyzed under the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 793 (1973). *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). Therefore, to establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability."[7] *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010).

An adverse employment action is "a materially adverse change in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks omitted). It is "more disruptive than a mere inconvenience or an

---

[7] The analysis under the ADA coincides with the analysis under the NYSHRL, *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000), and the NYCHRL, *see Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 30 (1st Dep't 2012).

8

alteration of job responsibilities," and includes changes such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (internal quotation marks omitted).

### 2. Application

Here, Plaintiff has not presented any evidence to suggest that an adverse employment action was taken against her because of her disability. Instead, she appears to rely on *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247 (MKB), 2013 WL 1232355 (E.D.N.Y. Mar. 26, 2013), to support her position that a failure to provide a reasonable accommodation amounts to an adverse employment action when the first three prongs of the *McDonnell-Douglas* test have been satisfied. Plaintiff misconstrues the law.

Establishing a failure to provide reasonable accommodation does not necessarily establish an adverse employment action. Discrimination claims under the ADA may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation. *McMillan*, 711 F.3d at 125–26. In *Ugactz*, the court explained that "[t]he Second Circuit has 'ruled that failure to make reasonable accommodation, when the employee has satisfied the first three elements of his claim, amounts to discharge "because of" his disability.'" 2013 WL 1232355, at *7 (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000)). The quoted language, however, relates to the question of causation once an adverse employment action is established. Both *Ugactz* and *Parker* involved scenarios where the failure to accommodate resulted in an adverse employment action. *See Ugactz*, 2013 WL 1232355, at *7 ("Plaintiff's claim is based on Defendant's alleged failure to accommodate, resulting in Plaintiff's termination."); *Parker*, 204 F.3d at 328 ("Terminating a disabled employee . . . who

9

can perform the essential functions of the job but cannot return to work because the employer has denied his request for reasonable accommodation, is disability discrimination under the ADA."). In other words, a failure to provide a reasonable accommodation in and of itself does not equate to an adverse employment action.

Here, Plaintiff has not established that Defendants took any adverse employment action against her. Therefore, to the extent that Plaintiff alleges a claim for discrimination on the basis of an adverse employment action, that claim is dismissed.

### C. *Failure to Accommodate*

#### 1. Applicable Law

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Such disability-based discrimination under the ADA includes failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A).

Claims brought under the ADA and NYSHRL for failure to accommodate[8] are analyzed under the burden-shifting framework established in *McDonnell Douglas*. *See Heyman v. Queens*

---

[8] In her Complaint, Plaintiff brings separate claims for disability discrimination and failure to accommodate, with the former being brought under the ADA (First Claim for Relief), NYSHRL (Second Claim for Relief), and NYCHRL (Third Claim for Relief), and the latter being brought only under the ADA (Eighth Claim for Relief). (*See* Compl. ¶¶ 44–53, 69–74.) However, Plaintiff's disability discrimination claims rely, at least in part, on Defendants' alleged denial of a reasonable accommodation. (*Id.* ¶¶ 45, 49, 52.) Therefore, I construe those claims as failure to accommodate claims brought under the ADA, NYSHRL, and NYCHRL.

10

*Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999). To maintain a prima facie claim under the ADA or the NYSHRL for failure to accommodate, "an employee must show that: '(1) he is a person with a disability under the meaning of the ADA [or the NYSHRL]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). Under the burden-shifting framework applied in these cases, after the plaintiff satisfies his burden of "production and persuasion as to the existence of an accommodation that is facially reasonable," the burden "shifts to the defendant to rebut the reasonableness of the proposed accommodation," which "is in essence equivalent to the burden of showing, as an affirmative defense, that the proposed accommodation would cause the defendant to suffer an undue hardship." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 76 (2d Cir. 2016) (internal quotation marks omitted).

Although "[t]he reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder," where an "employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'" *Noll*, 787 F.3d at 94 (quoting *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996)); *see also Gronne v. Apple Bank for Sav.*, 1 F. App'x 64, 67 (2d Cir. 2001) (summary order) ("Summary judgment is . . . appropriate where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide, or when the employer offers an accommodation that is plainly reasonable." (citation and internal quotation marks omitted)). If

11

the proposed accommodation is "plainly reasonable," "[t]here is no need to engage in further burden-shifting to consider whether the employee's requested accommodation would have been reasonable." *Noll*, 787 F.3d at 94 (citation omitted); *see also Kelly v. Starwood Hotels & Resorts Worldwide, Inc.*, 15cv6309 (DLC), 2017 WL 1133433, at *3 (S.D.N.Y. Mar. 24, 2017) (explaining that where an employer has "allegedly declined to offer a reasonable accommodation . . . courts apply the [*McDonnell-Douglas*] burden-shifting framework," but that if the employer has taken or offered measures to accommodate the disability, the employer is entitled to summary judgment if the accommodation is "plainly reasonable").

"A reasonable accommodation is one that 'enables an individual with a disability who is qualified to perform the essential functions of that position . . . or to enjoy equal benefits and privileges of employment.'" *Noll*, 787 F.3d at 94 (quoting 29 C.F.R. § 1630.2(o)(1)). A reasonable accommodation can "take many forms, but it must be effective." *Id.* at 95; *see also Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sciences*, 804 F.3d 178, 189 (2d Cir. 2015) ("The hallmark of a reasonable accommodation is effectiveness."). However, an employer is "not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll*, 787 F.3d at 95; *see also Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 479 (S.D.N.Y. 2013) ("[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." (citation omitted)). Given that the determination of whether something constitutes a reasonable accommodation "is necessarily fact-specific[,] . . . determinations on this issue must be made on a case-by-case basis." *Wernick*, 91 F.3d at 385.

## 2. Application

Defendants do not appear to challenge the first two prongs of the burden-shifting test.[9] (*See* Defs.' Mem. 5–9; Defs.' Reply 3–8.)[10] Rather, Defendants contend that they offered Plaintiff several reasonable accommodations that Plaintiff turned down, that Plaintiff's requested accommodation of moving back to the seventh floor was not possible, and that Plaintiff was responsible for the breakdown in the interactive process. (Defs.' Mem. 7–9; Defs.' Reply 6–7.) In response, with respect to Defendants' offer to provide Plaintiff with an air purifier for her workstation, (*see* Defs.' 56.1 ¶ 16), Plaintiff claims that the air purifier offered would not have been effective, and as proof she cites to her own testimony during her deposition and in an affidavit in which she recounted a conversation she allegedly had with customer service representatives for manufacturers of the air purifier being offered, (*see* Pl.'s Counter 56.1 ¶ 16; Pl.'s Opp. 10–11). This evidence is plainly inadmissible hearsay and cannot be used to contest summary judgment. *See Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) ("'Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment,' and a 'district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence.'" (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 582 F.3d 244, 264 (2d Cir. 2009))). On the other hand, Defendants have offered no facts to support the conclusion that the air purifier offered was a plainly reasonable

---

[9] Defendants make reference to the fact that both Plaintiff's and Defendants' experts agreed that the eighth floor did not contain excessive levels of dust. (Defs.' Mem. 7.) It is unclear whether this reference is intended to support an argument that Plaintiff has failed to establish that she has a qualifying disability. If it is, I nevertheless find that Plaintiff has set forth sufficient evidence to create a genuine dispute of material fact related to the issue of whether she has a qualifying disability—namely the statement of Dr. Steven M. Simons, which states that Plaintiff "suffers chemical sensitivities to dust which trigger her acid reflux." (Bellovin Aff. Ex. 1.)

"Bellovin Aff." refers to the Affirmation of Marshall B. Bellovin, Esq. in Opposition, filed on March 27, 2017. (Doc. 86.)

[10] "Defs.' Reply" refers to Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment, filed on April 10, 2017. (Doc. 93.)

accommodation. (*See* Defs.' Mem. 7–9; Defs.' Reply 6–7.)

Defendants also offered to grant Plaintiff's requested accommodation of relocating her back to the seventh floor, but only under the condition that she transfer groups. (*See* Pl.'s Counter 56.1 ¶ 21.) However, given that this involved what Plaintiff believed to be a demotion, (*see* Pl.'s Opp. 9), an assertion that Defendants have not adequately rebutted, I do not consider Defendants to have shown that this was a plainly reasonable accommodation warranting summary judgment in their favor.

I next consider whether Defendants have shown that Plaintiff failed to "identify a facially reasonable accommodation that the [Defendants] refused to provide." *Gronne*, 1 F. App'x at 67. Plaintiff here stated that she believes that a reasonable accommodation would be to allow her to move back to the seventh floor while maintaining the same position. (Pl.'s Counter 56.1 ¶¶ 19–20.) However, the parties disagree whether Plaintiff's job required the type of in-person supervision rendering that request patently unreasonable. (*See id.* ¶ 20.) On one hand, in support of their position that Defendants could not move Plaintiff to the seventh floor, Defendants offer the NYPD EEO's response to Plaintiff's request for a reasonable accommodation, which noted that:

> If Ms. Berger was to be relocated managers would be unable to sufficiently supervise these responsibilities remotely. As part of her duties Ms. Berger is responsible to communicate with outside vendors. All vendor interaction must be monitored by the appropriate supervisor to ensure security and confidentiality is maintained. Daily interaction with other members of the group Ms. Berger is assigned to is also critical to make certain that proper diagnostics and notifications for system outages are shared.

(Martone Decl. Ex. F, at 2.)[11] Defendants also cite to deposition testimony from Plaintiff's

---

[11] "Martone Decl." refers to the Declaration in Support of Defendants' Motion for Summary Judgment, filed on February 13, 2017. (Doc. 82.)

14

supervisor, Wayne Scibelli, noting that he "would have preferred" Plaintiff to stay on the eighth floor with her group, (*id.*, Ex. C, at 107:12-14), and from another supervisor, Andrew Krimsky, stating that there "has to be face-to-face communications" with other employees and supervisors, and stating that being on a different floor is possible but inefficient, (*id.*, Ex. D, at 163:16-21). Plaintiff, on the other hand, in support of her claim that her work duties do not require constant, in-person, supervision, also cites to Scibelli's testimony noting that it would be possible for Plaintiff to be called up to the eighth floor as needed, (Bellovin Aff. Ex. 5, at 107:15-108:5), as well as the deposition of Evan Feliciano, Plaintiff's co-worker, who testified that it would be feasible for Plaintiff to move to the seventh floor while maintaining the same duties and responsibilities, (*id.*, Ex. 3, at 88:24-89:13). These disputes make it possible for a reasonable trier of fact to determine that Plaintiff's request was reasonable. As a result, because I can neither find that there are undisputed facts establishing that the Defendants' proposed accommodations were "plainly reasonable," nor that Plaintiff failed to identify a facially reasonable accommodation, I deny Defendants' motion for summary judgment with respect to this issue.

Defendants further argue that summary judgment is warranted because Plaintiff is responsible for the breakdown in the "interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Noll*, 787 F.3d at 98 (quoting *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)); *see also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."). Specifically, Defendants note that after they scheduled Plaintiff for a medical examination to determine the

15

extent of her medical condition to adequately accommodate her, Plaintiff refused to attend. (*See* Pl.'s Counter 56.1 ¶¶ 17–18.)

Certainly, "[i]f an employer has made reasonable efforts to communicate with an employee, or if the employee causes the interactive process to collapse, an employer will not be liable for failing to make an accommodation under the ADA." *Julius v. Dep't of Human Res. Admin.*, No. 08 Civ. 3091(PKC), 2010 WL 1253163, at *10 (S.D.N.Y. Mar. 24, 2010) (internal quotation marks omitted). However, given that Plaintiff explains that she was amenable to the medical examination if her lawyer was present, (Pl.'s 56.1 ¶¶ 7–8), that she did not turn down the accommodation of an air purifier as a general matter, (Pl.'s Counter 56.1 ¶ 17), and that no alternative air purifier was offered, (Pl.'s 56.1 ¶ 3), a reasonable trier of fact could find that Plaintiff was not responsible for the breakdown in the interactive process. As such, this theory similarly does not provide a basis upon which I may grant summary judgment to Defendants. *Cf. Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 945–46 (2d Cir. 2008) (summary order) (affirming a district court's grant of summary judgment where the employer was receptive to the plaintiff's proposed accommodation, which depended on plaintiff making arrangements that she failed to make); *Julius*, 2010 WL 1253163, at *10 (granting summary judgment where the plaintiff failed to follow up on employer's offer to satisfy plaintiff's requested accommodation, which was contingent on plaintiff taking additional steps and filing supporting documentation). Defendants' motion for summary judgment as to Plaintiff's failure to accommodate claims under the ADA and NYSHRL is therefore denied.

The NYCHRL provides even broader protection than its federal and state counterparts. *See Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 416 (S.D.N.Y. 2014). Specifically, the NYCHRL expands the definition of a reasonable accommodation to "such accommodation that

*can* be made that shall not cause undue hardship in the conduct of the [employer's] business."

N.Y.C. Admin. Code § 8-102(18) (emphasis added). Therefore, I also deny summary judgment as to Plaintiff's broader NYCHRL claims.

### D. *Requirement of a Medical Examination*

Under the ADA,

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). The parties do not dispute that the requested medical examination was disability-related. As such, Defendants' request that Plaintiff appear for a medical examination is only lawful under the ADA if it falls under the exception of being "job-related and consistent with business necessity." *Id.*

"[I]n proving a business necessity, an employer must show more than that its inquiry is consistent with mere expediency." *Conroy v. N.Y State Dep't of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir. 2003) (internal quotation marks omitted). Rather, the employer must show that the business necessity is "vital to the business." *Id.* The employer must also show that the request is not broader or more intrusive than is necessary. *Id.* at 98. The standard examples of valid business necessities include where an employer has reason to doubt the employee's capacity to perform his or her duties based on a known disability, or where an employer has reason to suspect abuse of an attendance policy. *Id.*

Still, "[d]isability-related inquiries and medical examinations that follow up on a request for reasonable accommodation when the disability or need for accommodation is not known or obvious also may be job-related and consistent with business necessity." U.S. Equal Emp. Opportunity Comm'n, Enforcement Guidance on Disability-Related Inquiries and Medical

17

Examinations of Employees Under the Americans with Disabilities Act (ADA) (2000), https://www.eeoc.gov/policy/docs/guidance-inquiries.html. I find that "[i]n seeking to determine the extent and types of accommodation that were truly necessary for [P]laintiff, [Defendants'] inquiries were 'job-related and consistent with business necessity.'" *Delson v. Mineta*, 144 F. App'x 136, 138 (2d Cir. 2005) (summary order) (quoting 42 U.S.C. § 12112(d)(4)(A)). I therefore grant Defendants' motion for summary judgment as to Plaintiff's medical examination claim.[12]

### E. *Hostile Work Environment*

Defendants move for summary judgment as to Plaintiff's hostile work environment claims, which are brought under the ADA, NYSHRL, and NYCHRL. The Second Circuit has "not yet decided whether hostile-work-environment claims are cognizable under the ADA." *Dollinger v. N.Y State Ins. Fund*, No. 16-4068-cv, 2018 WL 832904, at *3 (2d Cir. Feb. 13, 2018) (summary order). However, assuming for purposes of this motion that these claims are cognizable, *see id.*, in order to establish a federal or NYSHRL hostile work environment claim, a plaintiff "must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" *Rivera*

---

[12] Plaintiff contends that the requested medical examination was unnecessary because she provided Defendants with a medical note from Dr. Steven M. Simons, which stated, "Sara Berger suffers chemical sensitivities to dust which trigger her acid reflux. In addition, when dust levels are high she becomes lightheaded and develops headaches. She should work in as dust free an environment as possible. She has been under treatment with me for this problem since 10/19/11." (Pl.'s Opp. 16; Bellovin Aff. Ex. 1.) Dr. Simons' note provides very little information regarding Plaintiff's disability or what an appropriate accommodation might be. If anything, the doctor's note gave Defendants reason to request a medical exam in order to ascertain the appropriate accommodation and to ensure she could perform her work duties safely. *See Gajda v. Manhattan & Bronx Surface Transit Operating Auth.*, 396 F.3d 187, 189 (2d Cir. 2005) (holding that plaintiff's representations regarding his health, which were signed by his doctor, supported employer's request to conduct a medical examination).

*v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)). Courts "examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Id.* (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)). This test is both subjective and objective. *Id.* The standard under NYCHRL is more permissive than under the ADA and NYSHRL since a "plaintiff need only demonstrate by a preponderance of the evidence that [she] has been treated less well than other employees because of [her disability]." *See Leung v. N.Y. Univ.*, 580 F. App'x 38, 40 (2d Cir. 2014) (summary order) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

Here, Plaintiff maintains only that her supervisor, Scibelli, created a hostile work environment because he was talking about Plaintiff's NYPD EEO complaint "out loud by [her] desk so anybody that was around or would walk by could have heard him," when that information was supposed to be confidential. (Pl.'s Counter 56.1 ¶ 30; Pl.'s 56.1 ¶ 10.) Plaintiff further admits that she does not remember her other supervisor, Krimsky, making any disparaging remarks about her alleged disability. (Pl.'s Counter 56.1 ¶ 31.) Thus, Plaintiff has not introduced any facts that would support an environment so "severe or pervasive" as to create a hostile work environment, and Defendants' motion for summary judgment as to Plaintiff's hostile work environment claims is granted.

## V. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' motion is GRANTED with respect to: (1) Plaintiff's disability discrimination claims for adverse employment actions under the ADA, NYSHRL, and NYCHRL; (2) Plaintiff's medical examination claim under the ADA; and (3) Plaintiff's hostile work environment claims under the ADA, NYSHRL, and NYCHRL. Defendants' motion is DENIED with respect to Plaintiff's disability discrimination claims for failure to provide a reasonable accommodation under the ADA, NYSHRL, and NYCHRL. The Clerk of Court is respectfully directed to terminate the open motion at Document 81.

The parties are directed to appear for a status conference on April 12, 2018 at 11:00 a.m. in Courtroom 518 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. The parties are further directed to submit a joint letter on or before April 9, 2018 setting forth proposed trial dates and anticipated length of trial.

SO ORDERED.

Dated: March 30, 2018
New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge