UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SARA BERGER,                                                :
                                                            :
                          Plaintiff,                        :
                                                            :         13-CV-6084 (VSB)
         - against -                                        :
                                                            :         **ORDER**
NEW YORK CITY POLICE DEPARTMENT,                            :
THE CITY OF NEW YORK, and WAYNE                             :
SCIBELLI,                                                   :
                                                            :
                          Defendants.                       :
                                                            :
----------------------------------------------------------- X

<u>VERNON S. BRODERICK</u>, United States District Judge:

Before me are Defendants' four motions in limine. (Docs. 136, 138, 141, 149.)[1] In these motions Defendants seek: (i) to require Plaintiff to call non-party Andrew Krimsky as a live-witness at trial, rather than offer his testimony by deposition; (ii) to preclude, in whole or in part, the testimony of Plaintiff's expert Dr. Kenneth Weinberg; (iii) to preclude, in whole or in part, the testimony of non-party witness Evan Feliciano; and (iv) to preclude Plaintiff from offering evidence of any work-related events or damages occurring after her relocation from the eighth floor in the Summer of 2015. I address each motion in turn below.

## I. **Testimony of Andrew Krimsky**

Defendant filed the motion related to Krimsky's testimony on December 2, 2019. (Docs. 136, 137.) On December 5, 2019, Plaintiff filed a letter stating that she "will not oppose Andrew Krimsky testifying live." (Doc. 146.) Accordingly, Defendant's motion in limine to require

---

[1] I also consider in this order the initial motion in limine filed by Defendants on August 12, 2019, (Doc. 123), seeking the same relief encompassed by the four more recent motions.

Plaintiff to call non-party Andrew Krimsky as a live-witness at trial, rather than offer his testimony by deposition, is GRANTED.

## II. Plaintiff's Expert Dr. Kenneth Weinberg

Defendants filed a motion on August 12, 2019, (Doc. 123), seeking to exclude the expert report and testimony of Dr. Kenneth Weinberg under Federal Rule of Evidence 702 as well as *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny. Plaintiff opposed the motion by filing a memorandum of law in opposition on September 3, 2019, (Doc. 125), and a supporting declaration, (Doc. 126). In light of the parties' arguments, I entered an order directing the parties to be prepared to answer various questions regarding Dr. Weinberg's expert report and the preparation of his opinions in this case at the Final Pretrial Conference on November 22, 2019. (Doc. 134.)

After hearing from the parties at the Final Pretrial Conference, I made a preliminary ruling that Dr. Weinberg's expert report contained speculation and hearsay, was argumentative, and included material that went beyond the scope of Dr. Weinberg's expertise and analysis in this case. (FPTC 33:23–34:21.)[2] I therefore concluded that the expert report itself should be excluded from evidence. I also ruled in relevant part (i) that Dr. Weinberg could not opine at trial that air samples taken a week after his walkthrough "did not demonstrate excessive levels of . . . dust, primarily because of the previous cleanup that had occurred, and even though significant time had passed, the NYPD became more aware of the dust hazard presented by this space," (FPTC 40:16-24); and (ii) that Dr. Weinberg could not opine on any correlation between 9/11 and Plaintiff's acid reflux, (FPTC 56:22–57:6). I further requested additional briefing from the parties regarding Dr. Weinberg's expert testimony and indicated that I was inclined to hold a

---

[2] "FPTC" refers to the November 22, 2019 Final Pretrial Conference transcript. (Doc. 147.)

2

*Daubert* hearing to determine the scope of Dr. Weinberg's trial testimony.

On December 2, 2019, Defendants filed their additional motion to preclude the expert testimony of Dr. Kenneth Weinberg. (Docs. 138–40.) In the motion, Defendants explained that the parties "ha[d] conferred and agree[d] to hold a hearing, outside the presence of the jury, concerning Dr. Weinberg's report and proposed testimony." (Doc. 139, at 3.) During a telephonic status conference on December 5, 2019, I informed the parties that in light of their request, I would hold a *Daubert* hearing. A hearing was tentatively scheduled for January 6, 2020. Accordingly, I reserve rendering a final ruling on Defendant's expert testimony motions, (Docs. 123, 138), until conclusion of the *Daubert* hearing.

### III. Testimony of Evan Feliciano

Defendants filed a motion on August 12, 2019, (Doc. 123), seeking to preclude Feliciano from testifying, arguing that such testimony would be irrelevant and include inadmissible hearsay. Plaintiff opposed the motion by filing a memorandum of law in opposition on September 3, 2019, (Doc. 125), and a supporting declaration, (Doc. 126). In light of the parties' arguments, I entered an order directing Plaintiff to be prepared to answer various questions regarding Feliciano's anticipated testimony at the Final Pretrial Conference. (Doc. 134.)

After hearing from the parties at the Final Pretrial Conference on November 22, 2019, I made a preliminary ruling that Feliciano could testify regarding "observations he made [and] things he saw." (FPTC 11:5-7.) Additionally, Plaintiff conceded that Feliciano would not testify about his knowledge of Defendant Wayne Scibelli's employment with the NYPD. (FPTC 31:16-17.) However, I invited further briefing on the relevance of other categories of testimony, and whether Plaintiff anticipated offering inadmissible hearsay through Feliciano's testimony. On December 3, 2019, Defendants filed their motion to preclude, in whole or in part, the testimony

3

of non-party witness Evan Feliciano, addressing the relevance and hearsay issues identified at the Final Pretrial Conference. (Docs. 141–43.) Plaintiff opposed the motion on the same day. (Doc. 144.) Defendants' motion seeks to exclude five categories of testimony: (i) Feliciano's impression of Plaintiff as a coworker; (ii) Feliciano's knowledge of complaints about the conditions of room 804(A); (iii) Feliciano's own complaints about the conditions of room 804(A); (iv) Feliciano's knowledge of Plaintiff's request for an accommodation; and (v) Feliciano's understanding of Wayne Scibelli's and Andrew Krimsky's responses to Plaintiff's request for an accommodation.

Defendants seek to exclude the first category of testimony as irrelevant under Federal Rule of Evidence 401 and unfairly prejudicial under Rule 403. (Doc. 143, at 6.) Plaintiff argues that Feliciano's observations of Plaintiff's ability to work before and after she was moved to room 804(A) is evidence relevant to whether Plaintiff needed an accommodation and also to Plaintiff's damages. (Doc. 144, at 3.) I agree, in part, with Defendants argument that Feliciano's subjective opinions of Plaintiff's work performance are not relevant, as ultimately the jury must decide whether Plaintiff was incapable of "perform[ing] the essential functions of her job" and therefore suffered damages. *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016). However, I find that Feliciano's observations of Plaintiff's ability to work both before and after she was moved to room 804(A) are relevant, because to succeed on her reasonable accommodation claim Plaintiff must demonstrate that she was a "qualified individual," *i.e.*, that she "could perform the essential functions of the employment position that [she held]." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). Therefore, Feliciano's observations of Plaintiff's ability to work in room 804(A) and elsewhere are admissible.

Defendants seek to exclude the second and third categories of testimony as involving

4

inadmissible hearsay under Rule 801 and 802, and because the "broader conditions of Room 804(A) such as room temperature . . . are irrelevant to Plaintiff's failure to accommodate claim." (Doc. 143, at 7.) Plaintiff argues that the complaints regarding room 804(A) fall under the present sense impression exception to the hearsay rule, Fed. R. Evid. 803(1), and argues that the broader conditions of the room "further exacerbated the dusty and dirty conditions and caused for there to be poorer air quality within room 804(A)," which could be relevant to whether Defendants offered Plaintiff a reasonable accommodation. (Doc. 144, at 3–4.) To the extent Feliciano heard complaints from others "describing or explaining an event or condition, made while or immediately after the declarant perceived it," Fed. R. Evid. 803(1), such evidence could qualify under the present sense impression to the hearsay rule. The same is true for any complaints made by Feliciano himself that qualify under the present sense impression exception. Because I have not been provided with the statements Plaintiff intends to offer, I must reserve ruling on whether any particular statements qualify under this exception until trial. Plaintiff's counsel is directed to provide a proffer of the substance of Feliciano's testimony that implicate his or others' present sense impressions of Room 804(A) prior to Feliciano being called as a witness.

With respect to complaints about the "broader conditions of Room 804(A)," such as whether the room was cold, I find that evidence of conditions beyond the alleged dusty and dirty nature of the room are irrelevant, because Plaintiff's claim encompasses only whether she was given a reasonable accommodation in connection with "her group's move to a dustier floor." (Plaintiff's Counter Rule 56.1 Statement, Doc. 87, at 1 (citing Plaintiff's Complaint ¶¶ 25, 30).) Plaintiff suggests that these broader conditions exacerbated the dusty and dirty conditions for which Plaintiff sought an accommodation, and are therefore relevant, but this conclusion would

5

require expert testimony not offered by Plaintiff's expert witness. *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). Therefore, to the extent other employees' complaints merely encompass comments about the general conditions of the room, and not the dusty and dirty conditions for which Plaintiff sought an accommodation, these complaints are inadmissible regardless of whether they fall under a hearsay exception. For those complaints that encompass both the dusty and dirty conditions, in addition to the broader conditions, then I would admit those statements to the extent they qualify under a hearsay exception. However, as I instructed at the Final Pretrial Conference, for any such statements, I intend to instruct the jury as to the limited relevance of the portions of the complaints referring to the broader conditions of the room. (FPTC 15:13-21.)

Plaintiff indicates her intent to ask Feliciano about complaints Feliciano expressed about the dusty and dirty nature of Room 804(A), and suggestions he had to improve the air quality in Room 804(A). (Doc. 144, at 5-6.) Plaintiff also indicates in her opposition memorandum that she intends to offer Feliciano's proposals to Defendants regarding reasonable accommodations that Defendants could have considered with respect to Plaintiff's condition. (Doc. 144, at 6.) Defendants contend that other employees' complaints and proposals for accommodation are categorically irrelevant on the theory that only Defendants' interactions with Plaintiff are relevant to her reasonable accommodation claim. (Doc. 146, at 8.) I disagree with Defendants. Whether other individuals shared Plaintiff's complaints about dust and dirt could help contextualize for the jury whether her proposed accommodations were reasonable, or whether they imposed an undue burden on Defendants. *See Max Torgovnick v. SoulCycle, Inc.*, No. 17 CIV. 1782 (PAC), 2018 WL 5318277, at *5 (S.D.N.Y. Oct. 29, 2018) (Granting a motion to

6

compel and stating "[d]ocuments regarding requests for reasonable accommodations made to the managers and supervisors with whom Plaintiff interacted . . . are relevant to Plaintiff's claims"). This is especially true in the instant case, as Plaintiff's request to move floors was in part denied because "it would entail her sitting away from her unit and her supervisors who must oversee her work, would prevent face-to-face communications between plaintiff and her colleagues, and would be inefficient." (Defendants' 56.1 Statement, Doc. 83, at 4.) Similarly, although "generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed," *Graves v. Finch Pruyn & Co*., 457 F.3d 181, 184 (2d Cir. 2006) (internal quotation marks omitted), the "ADA contemplates that employers will engage in "an 'interactive process' with their *employees* and in that way work together to assess whether an employee's disability can be reasonably accommodated," *Brady v. Wal-Mart Stores, Inc*., 531 F.3d 127, 135 (2d Cir. 2008) (emphasis added and citations omitted). *See also McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 102 (2d Cir. 2009) ("an employer is required to act proactively to accommodate the disability of an employee even if the employee does not request accommodation"). Therefore, other employees' complaints about the dusty and dirty nature of Room 804(A) and their suggestions of what could be done about those conditions are not irrelevant. However, regarding Feliciano's own opinions as to the reasonableness of any proposed accommodations, I find that such testimony would constitute an inadmissible layperson opinion under Rule 701 and should be excluded. Similarly, I preclude testimony providing other employees' opinions concerning the reasonableness and/or effectiveness of their suggestions concerning the condition of Room 804(A).

Defendants object to the fourth and fifth categories of testimony arguing that Feliciano's knowledge of Plaintiff's requests for an accommodation and Defendants' responses to such

requests is based on inadmissible hearsay, and involves improper lay witness opinions under
Rule 701. (Doc. 143, at 12–15.) Plaintiff argues that Feliciano's knowledge is based on
discussions with Defendant Scibelli, and Andrew Krimsky—who was Plaintiff's supervisor
employed by Defendant the City of New York at the time the statements were made. (Doc. 144,
at 6–7.) As I stated at the Final Pretrial Conference, I find that statements made by Defendant
Scibelli are admissible under the party opponent exclusion to the hearsay rule. (FPTC 32:15-18
(citing Fed. R. Evid. 801(d)(2)(A) (an opposing party's statement includes a statement that "was
made by the party in an individual or representative capacity").) I find that statements made by
Andrew Krimsky are similarly admissible under the party opponent exclusion to hearsay. *See*
Fed. R. Evid. 801(d)(2)(D) (an opposing party's statement includes a statement "made by the
party's agent or employee on a matter within the scope of that relationship and while it existed").

## IV. Events After Plaintiff's Transfer from Room 804(A)

At the Final Pretrial Conference on November 22, 2019, I asked Plaintiff if her claim
involved a claim for damages arising from events after she was transferred off of the eighth
floor, to which Plaintiff responded "yes." (FPTC 39:7-12.) Accordingly, I instructed the parties
to brief whether evidence of damages after Plaintiff's transfer off of the eighth floor would be
admissible at trial. (FPTC 57:19–58:2.) Defendants filed a motion on December 6, 2019, (Doc.
151), seeking to preclude such evidence, and Plaintiff filed a brief on the same day, (Doc. 154),
followed by an opposition memorandum on December 10, 2019, (Doc. 156).

As I noted at the Final Pretrial Conference, Plaintiff's accommodation requests involved
her request to relocate to the seventh floor. (*See* Complaint, Doc. 1, at ¶¶ 27–29 ("In early
November 2011, plaintiff requested a reasonable accommodation for her medical disability.
Specifically, plaintiff requested that her work area be relocated to an office on the floor below,

which is part of the same department that she currently works in, and where she previously worked. Plaintiff reiterated her request for a reasonable accommodation, to no avail.") In addition, as stated above, Plaintiff's claim encompasses only whether she was given a reasonable accommodation in connection with "her group's move to a *dustier* floor." (Plaintiff's Counter Rule 56.1 Statement, Doc. 87, at 1 (citing Plaintiff's Complaint ¶¶ 25, 30) (emphasis added).) Accordingly, as I stated at the Final Pretrial Conference, "to the extent there were other accommodation requests, they are not part of this case." (FPTC 57:23-25.) Because in the Summer of 2015 Plaintiff was transferred from Room 804(A) to the seventh floor, her request for a reasonable accommodation—"that her workspace be relocated back down to her original floor"—was in essence mooted. (Plaintiff's Counter Rule 56.1 Statement, Doc. 87, at 2.) I therefore find that evidence of Plaintiff's alleged damages following her transfer from the eighth floor in the Summer of 2015 is irrelevant and thus inadmissible. *See Bartlett v. N.Y. State Bd. of Law Examiners*, 226 F.3d 69, 85 (2d Cir. 2000) (stating that a defendant is only "liable for damages arising from its failure to accommodate"); *cf. E.E.O.C. v. Yellow Freight Sys., Inc.*, No. 98 CIV. 2270(THK), 2002 WL 31011859, at *29 (S.D.N.Y. Sept. 9, 2002) ("Plaintiff is entitled to a backpay award that compensates the decreased earnings he suffered as a result of Defendant's discrimination, not those resulting simply from Plaintiff's injury.").

## V. Conclusion

For the foregoing reasons, it is hereby:

ORDERED that Defendant's motion in limine to require Plaintiff to call Andrew Krimsky as a live-witness at trial, rather than offer his testimony by deposition, is GRANTED.

IT IS FURTHER ORDERED that I reserve ruling on Defendant's motion in limine to preclude the expert testimony of Dr. Kenneth Weinberg until after a *Daubert* hearing scheduled for January 6, 2020, at 10:30 a.m.

IT IS FURTHER ORDERED that Defendant's motion in limine to preclude the testimony of Evan Feliciano is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's counsel is to provide a proffer of the substance of Feliciano's testimony that implicate his or others' present sense impressions of Room 804(A) prior to Feliciano being called as a witness.

IT IS FURTHER ORDERED that Defendant's motion in limine to preclude evidence of work-related events or alleged damages occurring after Plaintiff's transfer from room 804(a) in the Summer of 2015 is GRANTED.

IT IS FURTHER ORDERED that the parties shall provide the court with courtesy copies of all trial exhibits no later than January 3, 2020.

The Clerk of Court is respectfully directed to terminate the open motions at Documents 136, 141, and 149.

SO ORDERED.

Dated: December 19, 2019
      New York, New York

Vernon S. Broderick
United States District Judge